IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


| | |
|---|---|
| MARY LOU SCHULENBERG, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of )<br>Social Security, )<br>)<br>Defendant. )<br>_____) | Case No. 08-4075-SAC |


RECOMMENDATION AND REPORT


This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On November 27, 2007, administrative law judge (ALJ) Jack R. Reed issued his decision (R. at 12-21).  Plaintiff alleges that she has been disabled since December 17, 2004 (R. at 12). Plaintiff is insured for disability insurance benefits through

December 31, 2009 (R. at 14).  At step one, the ALJ determined
that plaintiff has not performed substantial gainful activity
since December 17, 2004, the alleged onset date of disability (R.
at 14).  At step two, the ALJ found that plaintiff has the
following severe impairments: chronic obstructive pulmonary
disease and osteopenia of the lumber spine (R. at 14).  At step
three, the ALJ determined that plaintiff's impairments do not
meet or equal a listed impairment (R. at 15).  After determining
plaintiff's RFC (R. at 16), the ALJ found at step four that
plaintiff is able to perform past relevant work as a storekeeper
(R. at 21).  Therefore, the ALJ concluded that plaintiff was not
disabled (R. at 21).

**III.  Did the ALJ err in his finding that plaintiff should have
made more persistent efforts to treat her impairments?**

In his decision, the ALJ stated the following:

> She stated she continues to smoke despite
> having breathing problems.  The evidence
> indicates that, despite being advised by her
> treating physicians to do so, the claimant
> has not followed medical advice regarding the
> need to stop smoking.  The claimant's failure
> to stop smoking negatively impacts her
> ability to work.  If the claimant were to
> stop smoking, the undersigned is persuaded
> her breathing difficulties would either cease
> or her condition would improve...
>
> The claimant did not provide any evidence of
> treatment for her impairments from October
> 2005 through October 2006...
>
> The evidence of record conflicts with

> claimant's testimony.  If the claimant's
> symptoms were debilitating as alleged, she
> would have made more persistent efforts to
> find some means of ameliorating them.

(R. at 18).  Plaintiff argues that the ALJ improperly determined

that she should have obtained further treatment or made more

persistent efforts to find some means of ameliorating her

impairments (Doc. 17 at 12-13).  Inexplicably, this issue was not

addressed by the defendant in his brief.

SSR 96-7p states the following:

> On the other hand, the individual's
> statements may be less credible if the level
> or frequency of treatment is inconsistent
> with the level of complaints, or if the
> medical reports or records show that the
> individual is not following the treatment as
> prescribed and there are no good reasons for
> this failure. However, the adjudicator must
> not draw any inferences about an individual's
> symptoms and their functional effects from a
> failure to seek or pursue regular medical
> treatment without first considering any
> explanations that the individual may provide,
> or other information in the case record, that
> may explain infrequent or irregular medical
> visits or failure to seek medical treatment.
> The adjudicator may need to recontact the
> individual or question the individual at the
> administrative proceeding in order to
> determine whether there are good reasons the
> individual does not seek medical treatment or
> does not pursue treatment in a consistent
> manner. The explanations provided by the
> individual may provide insight into the
> individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7; see Madron v. Astrue, 311 Fed.

Appx. 170, 178 (10th Cir. Feb. 11, 2009).

Although the ALJ indicated in his decision that plaintiff

6

should have made more persistent efforts to find some means of ameliorating her impairments, and specifically noted her failure to follow medical advice to stop smoking and her failure to seek treatment for her impairments from October 2005 through October 2006, the ALJ did not ask the plaintiff at the hearing why she had not made more persistent effort to obtain medical treatment or follow medical advice. At the hearing, the ALJ did ask the plaintiff about her treatment for COPD and her smoking. Plaintiff testified that she was told that if she quit smoking, her COPD would not get worse, but they did not inform her that it would improve (R. at 413).[1]  Plaintiff was then asked by her attorney if she was on the patch; in her answer, she testified that her doctor gave her a prescription for Chantix,[2] which is a prescription pill specifically developed to help people quit smoking (www.chantix.com, Sept. 9, 2009). She said she could not afford it because of the cost (R. at 414).

Plaintiff was then asked by her attorney about the use of a nebulizer machine in regards to her COPD. Plaintiff testified

---

[1]The ALJ found that he was "persuaded" that if plaintiff quit smoking, her breathing difficulties would either cease or her condition would improve (R. at 18).  Dr. Katzman, the medical expert who testified at the hearing, stated that plaintiff's pulmonary complaints would be much better if she did not smoke (R. at 382).

[2]Although the transcript spelled the drug as "Schantex," there is a prescription medication called Chantix developed to help people stop smoking.   www.chantix.com (Sept. 9, 2009).

that she had one, but that she could not afford the medication for it.  She did use it for 1 ½ years, but could not afford to continue using it due to its cost, and indicated that they did not offer plaintiff an alternative medication after that (R. at 414-415).

The ALJ relied on plaintiff's failure to have made "more persistent efforts to find some means of ameliorating" her impairments, including medical advice to stop smoking and her failure to seek treatment for her impairments from October 2005 through October 2006, to find plaintiff's allegations less credible (R. at 18).  However, the ALJ failed to ask the plaintiff to explain why she had not made more persistent efforts to seek medical treatment or follow medical advice for her impairments, and the ALJ also failed to mention or consider plaintiff's testimony that treatment options to help her quit smoking and to treat her COPD were not available due to cost.  As noted above, the ALJ "must" not draw any inferences about an individual's symptoms and their functional effects because of a failure to seek or pursue regular medical treatment without first considering any explanation that the individual may provide. Furthermore, the fact that the individual may be unable to afford treatment and may not have access to free or low-cost medical services is a legitimate excuse.  SSR 96-7p; Madron, 311 Fed. Appx. at 178.  The ALJ clearly erred by failing to consider

plaintiff's explanations for not being able to pursue certain treatment options to ameliorate her impairments.  Furthermore, the ALJ cannot distort the evidence and ignore evidence favorable to the plaintiff.  <u>Owen v. Chater</u>, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

The court should not engage in the task of weighing evidence in the first instance, <u>Clifton v. Chater</u>, 79 F.3d 1007 at 1009; <u>Neil v. Apfel</u>, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998), but should review the Commissioner's decision only to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards. <u>Clifton</u>, 79 F.3d at 1009.  Because the ALJ asserted that plaintiff should have made more persistent efforts to find a means of ameliorating her impairments, but failed to inquire of plaintiff why she did not make more persistent efforts to find a means of ameliorating her impairments, and failed to consider plaintiff's inability to afford certain treatment options, the court will not in the first instance attempt to consider what weight the ALJ would have given to plaintiff's credibility had he considered this evidence.  Therefore, this case shall be remanded for proper consideration of this evidence.

**IV.  Did the ALJ err by failing to consider all of the opinions of Dr. Stueve concerning plaintiff's impairment and her ability to work?**

Dr. Stueve was plaintiff's treating physician.  The following is a select summary of his treatment notes regarding the plaintiff:

> February 18, 2004: "She misses work frequently because of the serious nature of her COPD.  The time she misses from work is appropriate and necessary...ASSESSMENT: At risk for termination from her employment because of absences due to her medical illnesses.  In my opinion, her absences are reasonable due to the severity of her symptoms" (R. at 246).
>
> June 30, 2004: "I had her come in today because of frequent COPD exacerbations causing her to miss work.  They tend to fall on a Monday.  I told her that seems suspicious.  She states she can't come up with a good reason why although last weekend they did go camping and work outdoors does seem to exacerbate her symptoms which include cough and shortness of breath...This round has been especially bad episode of her COPD" (R. at 213).
>
> July 7, 2004: "ASSESSMENT: COPD exacerbation, which is doing better.  Overall she still has significant disease" (R. at 210).
>
> October 26, 2004: "SUBJECTIVE:...I smelled alcohol on her breath and I asked her about this.  She states she has had four beers today...PLAN:...5. I told her I would feel quite uncomfortable about giving her a note excusing her from work today because she has been drinking...I also cautioned her that she cannot drink alcohol at the same time she is taking lorazepam or Fiorinal.  She denies that she has missed work in the past because of alcohol consumption.  A recent liver profile did show normal liver enzyme tests. I am going to give her the benefit of the doubt that she does not have a drinking problem..." (R. at 181-182).

> February 16, 2005: "I filled out a form that
> she had brought to me for a disability claim.
> I had filled out the information that was
> required but under the area explaining
> disability I explained that she is only
> unable to work on days she has exacerbations.
> Otherwise can perform her work in my opinion
> and therefore does not qualify for
> disability...ASSESSMENT: COPD.  She is upset
> that I did not indicate that she is disabled
> but in my opinion her COPD is not severe
> enough to disable her" (R. at 166).

The only direct reference by the ALJ to the above treatment notes
are the following which reference the treatment note of February
16, 2005:

> W. Greg Stueve, M.D., reported claimant was
> not disabled in his opinion and her chronic
> obstructive pulmonary disease was not severe
> enough to disable her (R. at 17).
>
> On February 16, 2005, Dr. Stueve, M.D.,
> reported claimant was not disabled in his
> opinion and her chronic obstructive pulmonary
> disease was not severe enough to disable her
> (R. at 18).

Plaintiff alleges that the ALJ erred because he selectively
reported only Dr. Stueve's opinion that plaintiff was not
disabled due to COPD, but failed to discuss other aspects of the
opinions of Dr. Stueve regarding the severity of her impairment,
her reasonable absences from work, or her inability to work when
she was exacerbations, as set forth above.  It is improper for
the ALJ to pick and choose among medical reports, using portions
of evidence favorable to his position, while ignoring other
evidence.  Carpenter v. Astrue, 537 F.3d 1264, 1265 (10th Cir.

11

2008); Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004).
The record must demonstrate that the ALJ considered all of the
evidence, but an ALJ is not required to discuss every piece of
evidence.  Rather, in addition to discussing the evidence
supporting his decision, the ALJ also must discuss the
uncontroverted evidence he chooses not to rely upon, as well as
significantly probative evidence that he rejects.  Clifton v.
Chater, 70 F.3d 1007, 1009-1010 (10th Cir. 1996); see Carpenter,
537 F.3d at 1266.

    At the hearing, Dr. Katzman testified as a medical expert.
He had reviewed the medical records, including the records of Dr.
Stueve (R. at 380-385).  Dr. Katzman noted that the medical
records showed that she had many absences for which she had
received excuses in order to return to work.  However, Dr.
Katzman further noted that her doctor was concerned that many of
those absences were on Monday, and he was suspicious for abuse of
alcohol (R. at 381).  Dr. Katzman specifically referenced the
opinions of Dr. Stueve on February 16, 2005 that plaintiff's COPD
was not severe enough to disable her.  Dr. Katzman stated that
"there's nothing to say in the file that she could not perform
work of at least light intensity on a sustained and gainful
basis" (R. at 382).  Plaintiff's counsel asked Dr. Katzman about
the 13 excused absences that are referenced in the medical
records of Dr. Stueve, and inquired of Dr. Katzman if all of

these were exacerbations of the COPD.  Dr. Katzman noted that she

was not examined on many occasions in which an excuse was

provided (R. at 384).  Dr. Katzman was then asked if it was still

reasonable to expect that a patient suffering from her level of

COPD would miss 2 or 3 days a month of work.  Dr. Katzman

answered as follows:

> You know, the doctor has called and recorded
> in his files that he calls into question her
> credibility of when these excuses are
> requested and called in.  I don't believe
> that the record reveals -- taking the record
> from top to bottom, that there is a level of
> severity to justify all these absences.

(R. at 385).  No further questions were then asked of Dr.

Katzman.

In his decision, the ALJ discussed the testimony of Dr.

Katzman as follows:

> The medical expert, Richard Katzman, M.D.,
> testified claimant had mild to moderate
> chronic obstructive pulmonary disease and
> osteoarthritis in the left shoulder. He noted
> the claimant had many absences from work, but
> many of these were on Monday and a treating
> physician expressed concern that they were
> related to alcohol use. He stated that when
> the claimant was told by a treating physician
> that her chronic obstructive pulmonary
> disease was not disabling she became upset
> (Ex.2F/4). He indicated there was not much
> objective evidence to support the claimant's
> allegations and her pulmonary function tests
> were consistent with a mild to moderate
> obstructive disease. He stated claimant's
> breathing impairment would improve if she
> stopped smoking. In Dr. Katzman's opinion the
> claimant had the residual functional capacity
> to perform at least light work. The medical

expert noted claimant had a history of low
back pain, but there was no evidence of nerve
compression. Dr. Katzman stated claimant did
not have an impairment or combination of
impairments that meet or equaled any listing
in the Listing of Impairments.

In response to questions from claimant's
attorney, the medical expert testified that
claimant had diffuse arthralgias, which is
just aching, and there was no evidence of
decreased range of motion, need of an
assistive device or any other limitations
related to this diagnosis. He stated
claimant's osteoarthritis was not sufficient
to [be] considered disabling. The medical
expert noted that while claimant had several
absences from work, she did not have a
physical examination on all those occasions
that could have corroborated her allegations.
Additionally, on at least one occasion her
husband picked up her slip to excuse her
absence. He stated the record does not
support a finding that claimant's impairments
were severe enough to justify her absences
from work. He reiterated that claimant's
chronic obstructive pulmonary disease was
worsened by her smoking.

The undersigned gives controlling weight to
the opinion of the medical expert because it
is consistent with the objective medical
evidence of record, the results of diagnostic
tests, the opinions of treating and examining
physicians and the signs and findings i[n]
the objective evidence of record.
Additionally, Dr. Katzman is familiar with
the other medical source opinions in the
record and the evidentiary requirements in
Social Security disability programs.

(R. at 18-19).

In reviewing the record in this case, the ALJ did not

directly reference many of the statements and opinions expressed

by plaintiff's treating physician, Dr. Stueve, including a

statement that she had reasonable absences from work, or that, although not disabled, she would be unable to work on days she has exacerbations.  However, in summarizing the testimony of the medical expert, Dr. Katzman, he did discuss Dr. Katzman's summary of the medical records of Dr. Stueve.  That summary noted that although plaintiff had many absences from work, many were on Monday, and her treating physician was concerned that they were related to alcohol use.  The ALJ also noted that Dr. Katzman indicated that plaintiff did not have a physical examination by Dr. Stueve on many occasions when she was given an absence from work.

At the hearing, Dr. Katzman was asked if plaintiff would miss 2 or 3 days of work a month due to her level of COPD.  Dr. Katzman did not indicate that she would miss 2 or 3 days of work month because of COPD, but stated that he did not believe that the record justified all of her past absences from work (R. at 385).  The ALJ noted in his decision that Dr. Katzman found that the record did not support a finding that plaintiff's impairments were severe enough to justify her absences from work.

Thus, the ALJ did, through his summary of the testimony of Dr. Katzman, incorporate into his decision many, if not all, of the statements and opinions of Dr. Stueve.  Dr. Stueve indicated that plaintiff was not disabled, and would be unable to work only on days she has exacerbations.  He did not indicate how often she

15

would miss work due to exacerbations.  Dr. Katzman was asked if
she would miss 2-3 days of work a month; Dr. Katzman did not
indicate that she would, but stated that he did not believe her
level of severity justified her past absences (R. at 385).  The
ALJ gave great weight to that opinion by Dr. Katzman (R. at 19).

However, plaintiff also references the following statement
by Dr. Stueve: "she is only unable to work on days she has
exacerbations.  Otherwise can perform her work in my opinion and
therefore does not qualify for disability" (R. at 166). Plaintiff
asserts that Dr. Stueve's statement that she is not disabled but
will miss work due to exacerbations is "seemingly contradictory,"
and therefore he should have been recontacted (Doc. 17 at 16).
20 C.F.R. § 404.1512(e)(1) indicates that the ALJ "will" seek
additional evidence or clarification from a medical source when
the report from the medical source contains a "conflict or
ambiguity that must be resolved" (2009 at 360).  The duty to
recontact is therefore present when the report from a medical
source contains a conflict or ambiguity.  Palmer v. Barnhart,
2006 WL 1581004 at *5 (D. Kan. June 6, 2006)(The duty to
recontact exists when there is a conflict in the treating
physician's report and not when the record as a whole contains
conflicting evidence).  The court would note that whether or not
the statements are contradictory would depend on how much work
Dr. Stueve believes that plaintiff would legitimately miss due to

16

exacerbations, and that is not clear from his statement; thus, the statement certainly appears to be ambiguous. The ALJ only referenced Dr. Stueve's statement that she was not disabled, and did not discuss his statement that plaintiff would miss work on days she has exacerbations. Thus, he offered no opinion on the potential contradiction or ambiguity in this statement. For this reason, when the case is remanded, the ALJ should either recontact Dr. Stueve in order to resolve this potential contradiction or ambiguity, or in the alternative, the ALJ should provide a legally sufficient explanation for not recontacting Dr. Stueve.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on September 17, 2009.


                              s/Gerald B. Cohn
                              GERALD B. COHN
                              United States Magistrate Judge